UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDWARD LURRY, JR., | : |
|     Plaintiff, | : |
| | : |
| v. | :   Case No. 3:13-cv-1157 (MPS) |
| | : |
| WARDEN FORD, et al., | : |
|     Defendants. | : |

RULING ON DEFENDANTS' MOTION TO DISMISS [Doc. #15]

The plaintiff, a parolee and *pro se*, has filed a complaint under 42 U.S.C. § 1983.  In his complaint he names nine defendants: Warden Ford, Commissioner Dzurenda, Parole Officer Supervisor Richard Anderson, Parole Officer Karen Lindley, Parole Officer Carolyn Mullen, Board of Pardons and Paroles Chairman Erika Tindill, Counselor Supervisor Clapp, Parole Hearing Officer Cardona and Warden Chapdelaine.[1]  The plaintiff alleges that he was denied procedural due process when he was brought to a correctional facility and charged with violating parole.  The plaintiff seeks punitive, monetary, nominal and compensatory damages.

By Initial Review Order filed August 29, 2013, the court dismissed all claims for damages against the defendants in their official capacities.  The defendants now move to dismiss all remaining claims.  For the reasons that follow, the defendants' motion is granted.[2]

---

[1] The plaintiff incorrectly spells Warden Chapdelaine's name as Chapdellane and Chapdeliane in the complaint.  He also misspells Parole Officer Mullen's name.  *See* Doc. #12.  The court uses the correct spellings.

[2] The plaintiff received notice of his obligation to respond to the motion and the consequences of failing to respond.  *See* Doc. #16.  The response was due on January 28, 2014.  Although a month has passed, the plaintiff has neither filed opposition papers nor sought an

I.   Facts

On May 22, 2013, the plaintiff was remanded to the custody of the Connecticut Department of Correction. Defendants Lindley and Mullen brought him to Hartford Correctional Center. On May 29, 2013, the plaintiff submitted an inmate request seeking the date, time and location of his parole revocation hearing. He contends that Administrative Directive 9.2, Section 13(a)(b)(c) entitles him to the revocation hearing. The plaintiff did not receive a response to his request from any counselor or counselor supervisor at Hartford Correctional Center.

On May 30, 2013, the plaintiff was transferred to Osborn Correctional Institution. He wrote weekly requests seeking information about a parole revocation hearing. Recipients of his letters included defendants Clapp, Mullen, Anderson, Tindill, Cardona and Dzurenda. In the letters, the plaintiff stated that he was entitled to notification of the date, time, and location of his parole revocation hearing within 72 hours and that he was entitled to a reclassification hearing within 14 days of reincarceration. The plaintiff did not receive any responses to his letters.

On June 19, 2013, the plaintiff submitted a grievance to defendant Chapdelaine regarding an alleged violation of his right to due process. He also submitted grievances to defendants Tindill, Mullen and Anderson. Defendant Chapdelaine denied the grievance. He appealed the denial on July 5, 2013, and had not received a response as of the time he filed the complaint.

The plaintiff contends that the defendants also have not provided him a copy of the documentation of his remand as required by Administrative Directive 9.2, section 13 D(1). He also did not receive any paperwork regarding the violation of special parole to prepare himself for the parole revocation hearing.

---

extension of time within which to do so.

The plaintiff states that he was classified as Risk Level 1 before his release from custody. Administrative Directive 9.2, section 13, requires that inmates who were at Risk Level 1 and whose community transfer has been revoked, must be afforded a risk level reclassification hearing within 14 days of their return to a correctional facility. The plaintiff contends that this provision applies to inmates under transitional supervision, residential program placement and parole status.

On July 8, 2013, the plaintiff spoke to defendant Chapdelaine regarding his grievance. Although she told the plaintiff she would look into the lack of notice regarding the parole revocation hearing, the plaintiff heard nothing further. Defendant Clapp informed the plaintiff that he has no responsibility for these matters.

II.     Standard of Review

When considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003). The court also may consider matters of which judicial notice may be taken, such as court rulings and prison directives. *See Staehr v. Hartford Financial Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (when considering a motion to dismiss, courts routinely take judicial notice of documents filed in other cases); *Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (court can take judicial notice of prison regulations when considering a motion to dismiss). The court considers not whether the plaintiff ultimately will prevail, but whether he has stated a claim upon which relief may be granted so that he should be entitled to offer evidence to support his claim. *See Walker v. Schult*, 717 F.3d 119,

124 (2d Cir. 2013).

In reviewing the complaint in response to a motion to dismiss, the court applies "a 'plausibility standard,' which is guided by two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the requirement that the court accept as true the allegations in the complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The court must be able to draw a reasonable inference from the alleged facts that the defendant is liable for the alleged misconduct. *See Walker*, 717 F.3d at 124 (citing *Iqbal*, 556 U.S. at 678). Even under this standard, however, the court liberally construes a *pro se* complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Walker*, 717 F.3d at 124.

III.   Discussion

The plaintiff contends that the denial of prompt notification of the date, time and location of a parole revocation hearing and the failure to schedule a prompt reclassification hearing violated his Fourteenth Amendment right to procedural due process and his Eighth Amendment right to be free from cruel and unusual punishment. The defendants move to dismiss the complaint on the grounds that the plaintiffs' request for declaratory and injunctive relief is

moot,[3] defendants Tindill and Cardona are protected by absolute judicial immunity, the plaintiff fails to allege the personal involvement of many of the defendants in the incidents underlying his claims, the plaintiff fails to state a cognizable due process claim, the plaintiff fails to state a cognizable Eighth Amendment claim and the defendants are protected by qualified immunity.

    A.    <u>Personal Involvement</u>

The defendants argue that the plaintiff fails to allege facts indicating how several defendants were involved in his claims.  To state a claim for damages against a defendant under section 1983, the plaintiff must allege facts showing the defendant's personal involvement in the alleged deprivation of his constitutional rights.  *See Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010).

State law provides that the Board of Pardons and Paroles has independent decision-making authority to establish conditions of special parole and rescind or revoke special parole. Conn. Gen. Stat. § 54-124a(f).[4]  Defendants Ford, Dzurenda, Chapdelaine and Clapp are employed by the Connecticut Department of Correction, not the Board of Pardons and Paroles,

---

[3]Although the defendants include argument relating to declaratory and injunctive relief, the plaintiff clearly specifies in his prayer for relief that he seeks damages only.

[4]Connecticut General Statutes, Section 54-124a(f) provides:
> The Board of Pardons and Paroles shall have independent decision-making authority to (1) grant or deny parole in accordance with sections 54-125, 54-125a, 54-125e and 54-125g, (2) establish conditions of parole or special parole supervision in accordance with section 54-126, (3) rescind or revoke parole or special parole in accordance with sections 54-127 and 54-128, (4) grant commutations of punishment or releases, conditioned or absolute, in the case of any person convicted of any offense against the state and commutations from the penalty of death in accordance with section 54-130a.

which is an autonomous state agency.  *See* www.ct.gov/bopp (last visited Feb. 25, 2014).  Parole revocation hearings are held by the Board of Pardons and Paroles.  *See* Conn. Gen. Stat. § 54-127a.

The plaintiff alleges that he wrote letters to defendants Clapp, Chapdelaine and Dzurenda, that defendant Clapp told him he had no responsibility for scheduling a parole revocation hearing, and that defendant Chapdelaine told him that she would look into the matter. The plaintiff does not allege that defendant Ford took any action or was informed of the plaintiff's concerns.  In addition, Parole Officers Mullen and Lindley and Parole Officer Supervisor Anderson are employed by the Department of Correction.  *See* Conn. Gen. Stat. § 540124a(g) (providing that the Department of Correction is responsible for supervising persons on parole or special parole).  As the Department of Correction and its employees have no control over parole revocation hearings, these defendants have no involvement in the alleged failure to schedule a prompt hearing.  Defendant Chapdelaine's agreement to look into the matter is insufficient to render her liable for any failure by others to schedule the hearing.  *See, e.g., Sunnen v. U.S. Dep't of Health and Human Servs.*, No. 13 Civ. 1242(PKC), 2013 WL 1290919, at * 3 (S.D.N.Y. Mar. 28, 2013) (contacting official who had no authority to correct alleged violation of rights insufficient to establish personal involvement); *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) (writing letters to individuals with no authority to correct violation of rights fails to establish personal involvement).  The defendants' motion to dismiss is granted as to the claims regarding scheduling and notification of a parole revocation hearing against defendants Dzurenda, Ford, Chapdelaine, Clapp, Mullen, Lindley, and Anderson.

    B.    Due Process Claim

The plaintiff contends that the failure to schedule prompt parole revocation and reclassification hearings violated his right to due process of law. He bases his due process claim on Administrative Directive 9.2, Section 13, entitled "Risk Level Reclassification from Community Placement." This section applies to inmates who are "remanded to custody and whose community transfer has been revoked[.]" *See* Administrative Directive 9.2, § 13, www.ct.gov/doc/LIB/doc/PDF/AD/ad0902.pdf (last visited Feb. 24, 2014). Elsewhere, the directive defines community release programs as Transitional Supervision, designed for inmates sentenced to a definite total effective sentence of two years or less, and Residential Program Placement, for inmates meeting other criteria and who are within eighteen months of their estimated discharge date or voted to parole date. *See* Administrative Directive 9.2, § 11.

The court takes judicial notice of the May 28, 2009 judgment mittimus filed in the plaintiff's criminal case, No. WWM-CR07131130-T, which states that the plaintiff was sentenced to a term of imprisonment of 54 months followed by five years special parole. *See* Defs.' Mem. Ex. B, Doc. #15-2 at 2. Because he was sentenced to a term of imprisonment longer than two years, the plaintiff was not eligible for the Transitional Supervision program.

The plaintiff's crime occurred on February 3, 2007. When he was remanded, the plaintiff immediately sought a parole revocation hearing. This action along with the fact that, allowing for pretrial detention credit as indicated on the mittimus, the 54 month sentence would have expired, leads the court to infer that the plaintiff was serving his term of special parole when he was remanded to custody. Inmates are eligible to participate in the Residential Program Placement before they are released on parole. The plaintiff did not meet this eligibility requirement. Thus, the plaintiff was not remanded from a community placement falling within

the purview of section 13.  Because the section does not apply to the plaintiff's circumstances, any due process claim arising from the defendants' failure to comply with the specific requirements of the directive necessarily fails.

State regulations provide that a parole revocation hearing should be held no later than sixty business days from the date of remand.  *See* Conn. Agencies Regs. § 54-124a(j)(1)-9(a) ("Parole revocation matters not resolved earlier shall proceed to a revocation hearing not later than sixty business days from remand unless continued for good cause.").  The plaintiff signed his complaint on July 23, 2013, 42 business days after he was remanded to custody.  Thus, any claim regarding untimely scheduling of a parole revocation hearing is premature.  The defendants' motion to dismiss is granted as to the due process claims arising from the failure to schedule a parole revocation hearing.

        C.      Eighth Amendment Claim

The plaintiff alleges that the denial of a prompt hearing resulted in his unjustified incarceration in violation of the Eighth Amendment.  The defendants contend that the plaintiff has alleged no facts to support an Eighth Amendment violation.

It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment's prohibition against cruel and unusual punishment.  *See Helling v. McKinney*, 509 U.S. 25, 31 (1993).  To state an Eighth Amendment claim for unconstitutional conditions of confinement, the plaintiff must allege facts demonstrating that prison officials have denied his "basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety."  *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 200 (1989).

To state an Eighth Amendment claim for unconstitutional conditions of confinement, the plaintiff must allege facts supporting "both an objective element–that the prison officials' transgression was 'sufficiently serious'–and a subjective element–that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' *i.e.*, with 'deliberate indifference to inmate health or safety.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The objective element is satisfied if the plaintiff can allege facts showing that the deprivation of his rights is sufficiently serious. *De minimis* levels of imposition on inmate rights do not constitute a constitutional violation. *See Bell v. Wolfish*, 441 U.S. 520, 539 n.2 (1979). Whether a deprivation is sufficiently serious to violate the Eighth Amendment is influenced by contemporary standards of decency. *See Walker*, 717 F.3d at 125. The subjective element requires the plaintiff to show that the defendants were aware of and disregarded a substantial risk of serious harm. *See Phelps*, 308 F.3d at 185-86. The defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serous harm exists, and ... must also draw the inference." *Farmer*, 511 U.S. at 837.

The plaintiff alleges no facts regarding the conditions of his confinement. He does not indicate that he was denied food, clothing, shelter or medical care, or that he otherwise was exposed to conditions posing an unreasonable risk of harm to his health or safety. Absent such allegations, the plaintiff fails to satisfy the objective prong of the test and fails to state a plausible Eighth Amendment claim. The defendants' motion to dismiss is granted as to the Eighth Amendment claim.

IV.   Conclusion

The defendants' motion to dismiss [**Doc. #23**] is **GRANTED**. The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED** this 5th day of March 2014 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge